**UNITED STATES of America,
Plaintiff,**

v.

**Efrain GONZALEZ–GONZALEZ,
Defendant.**

**No. CRIM.05–0404(JAG).**

United States District Court,
D. Puerto Rico.

May 31, 2006.

254

Michael S. Corona–Munoz, Guaynabo, PR, for Plaintiffs.

Elba Gorbea, United States Attorney's Office, Torre Chardon, San Juan, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Pending before the Court is a Motion to Suppress, filed by the defendant Efrain Gonzalez–Gonzalez ("defendant") on February 28th, 2006. (Docket No. 20). For the reasons set forth below, the Court **GRANTS** the Motion.

## FACTUAL AND PROCEDURAL BACKGROUND

Raul Figueroa–Gonzalez ("Figueroa–Gonzalez"), a fugitive for whom an arrest warrant had been issued, was arrested on November 8th, 2005, while hiding inside the defendant's apartment, at the Alejandrino Public Housing Project in Guaynabo, Puerto Rico. On November 17th, 2005, the defendant was indicted for harboring and concealing Figueroa–Gonzalez, in violation of 18 U.S.C. § 1071.[1] (Docket No. 9). The government's case is grounded on the defendant's statement, made while detained in a police car, that "he [Figueroa–Gonzalez] came this morning to take a bath and eat something and I told him he could not stay because he was one of the most wanted."

On February 28th, 2006, the defendant filed a motion requesting that all statements and admissions obtained from him be suppressed, as they are the fruit of an illegal search of his home. (Docket No. 20). On that same date, the Court referred the Motion to a Magistrate–Judge for a Report and Recommendation (R & R). (Docket No.24). On March 28th, 2006, Chief Magistrate–Judge Justo Arenas issued an R & R to grant the defendant's motion, finding that notwithstanding the warrant for the arrest of Figueroa–Gonzalez, the government was

**1.** 18 U.S.C. § 1071. Concealing person from arrest

Whoever harbors or conceals any person for whose arrest a warrant or process has been issued under the provisions of any law of the United States, so as to prevent his discovery and arrest, after notice or knowledge of the fact that a warrant or process has been issued for the apprehension of such person, shall be fined under this title or imprisoned not more than one year, or both; except that if the warrant or process issued on a charge of felony, or after conviction of such person of any offense, the punishment shall be a fine under this title, or imprisonment for not more than five years, or both.

also required to secure a search warrant or consent to enter the defendant's apartment. (Docket No. 32). The R & R further states that the exigent circumstances exception claimed by the government is unavailable because "[t]ime was ample; manpower abounded; the premises were surrounded and secured; ... [and] the drama was being played out during daylight hours and in an urban setting." *Id.,* at 14.

On April 11th, 2006, the government moved for a *de novo* hearing to review the Magistrate–Judge's R & R. (Docket No. 34). On May 5th, 2006, the Court issued an Order recommitting the matter to Magistrate–Judge Arenas, as it found that the record was not sufficiently developed to rule upon the defendant's motion. Specifically, the Court noted that the motion to suppress identifies the illegal search of the defendant's apartment as grounds for the suppression of his incriminating statements, but the defendant's counsel's statements during the suppression hearing conveyed that the request is predicated on the illegality of defendant's arrest. Accordingly, the Court asked Magistrate–Judge Arenas to address the following five questions:

1) whether the defendant's detention on November 8th, 2005, amounted to an arrest;

2) if his detention indeed amounts to an arrest, whether it was a lawful arrest, that is, an arrest supported by probable cause;

3) if the arrest was illegal, whether his incriminating statement is so connected to his arrest as to render it the fruit of the poisonous tree;

4) whether the defendant's arrest and statements are so connected to the warrantless search of his apartment as to render them the fruit of the poisonous tree; and

5) whether defendant's statements were obtained in violation of *Miranda.*

Magistrate–Judge Arenas issued a supplemented R & R on May 8th, 2006, in which he reported that: 1) the defendant's detention amounted to an arrest, inasmuch as he was placed in the back seat of a police patrol car with handcuffs on, and was not free to leave; 2) the arrest was not supported by probable cause; 3) the defendant's statements are inextricably intertwined with both the illegal search and arrest and, thus, are the fruit of the poisonous tree; and 4) that the statements provided by the defendant were not the result of a *Miranda* violation. (Docket No. 39).

On May 22nd, 2006, the government filed a motion objecting to the Magistrate–Judge's finding that the defendant's detention amounted to an arrest. (Docket No. 40). The government also reasserted that the incriminating statements uttered by the defendant were spontaneous and voluntary. The Court considers each argument in turn.

## STANDARD OF REVIEW

A. *Standard for Reviewing a Magistrate–Judge's Report and Recommendation*

█ A District Court may, on its own motion, refer a pending motion to a U.S. Magistrate–Judge for a Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Local Rule 72(a). Pursuant to Fed.R.Civ.P. 72(b) and Local Rule 72(d), the adversely affected party may contest the Magistrate–Judge's Report and Recommendation by filing written objections "[w]ithin ten days of being served" with a copy of the order. *See* 28 U.S.C. § 636(b)(1). Since defendants have filed timely objections to the Magistrate–Judge's Report

256

and Recommendation, the Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which specific objection is made. *See United States v. Raddatz*, 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Lopez v. Chater*, 8 F.Supp.2d 152, 154 (D.P.R.1998).

## DISCUSSION

### 1. *Whether the defendant's detention amounted to an arrest*

■ Under the applicable law, the determinative factor in assessing whether a person is under arrest, is to consider if, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

■ In the case at bar, the government does not deny that the defendant was handcuffed, but asserts that the detention did not amount to an arrest because "handcuffing alone is not determinative." (Docket No. 40 at 4). The government does not elaborate further, nor advances other arguments to sustain its claim. Consequently, since the government does not rebut the Magistrate–Judge's finding that the defendant could not "ask to have the handcuffs taken off and leave," the Court rules that the defendant was under arrest when he uttered the incriminating statements.

### 2. *Whether the incriminating statements are the fruit of the poisonous tree*

■ The Magistrate–Judge correctly concluded that the search conducted on the defendant's apartment was in violation of *Steagald v. United States*, 451 U.S. 204, 213–214, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), which requires that, apart from consent or exigent circumstances, a search warrant is required before one's home can be searched for a third person. The government's contention that exigent circumstances were present is unavailing, inasmuch as the agents received the tip placing Figueroa–Gonzalez in the defendant's home with sufficient time for them to secure a search warrant. The government's contention that they did not applied for one because they expected the defendant and his wife to consent to their home being search is, to say the least, untenable. In light of the foregoing, and since the government concedes that the defendant's arrest was executed without probable cause,[2] the only question that remains to be addressed is whether the incriminating statements are the fruit of the illegal search and arrest.

The Magistrate–Judge found that the "defendant's statement is inextricably intertwined with his arrest," and that "the statement would not have been uttered were it not for his illegal custody and was the product, admittedly spontaneous, of nothing else but the agents' giving up their attempts to elicit consent from the defendant's wife." (Docket No. 39 at 3). To this, the government responds that the defendant's statements were not the product of custodial interrogation, and that the defendant "has presented no evidence that the law enforcement official engaged in a conscious design to create an "interrogation environment."

Upon review of the record, the Court rules that the government fails in its bur-

---

**2.** The government states that there was probable cause for the defendant's arrest. (Docket No. 40 at 5). However, the government fails to elaborate on the basis for its conclusion and, consequently, the Court will not consider the objection. *See* Local Rule 72(d).

den to show the admissibility of the statements. *See Brown v. Illinois*, 422 U.S. 590, 604, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). The government's argument relies too much on the fact that the statements were voluntary, that is, not elicited through custodial interrogation. Nonetheless, even if the statements in this case are found to be voluntary under the Fifth Amendment, as the Court does,[3] the Fourth Amendment issue remains.

The Supreme Court stated in *Brown*, 422 U.S. at 602, 95 S.Ct. 2254, that "in order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, *Wong Sun*[4] requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be sufficiently an act of free will to purge the [Fourth Amendment violation]." Then, underscoring that the statement's admissibility shall be considered in light of the distinct policies and interests of the Fourth Amendment, the Court ruled that

> [t]he *Miranda* warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factors to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances, . . . and, particularly, the purpose and flagrancy of the official misconduct are all relevant. . . The voluntariness of the statement is a threshold requirement. . . And the burden of showing admissibility rests, of course, on the prosecution.

*Id.*, at 603–604, 95 S.Ct. 2254 (citations omitted).

■ In sum, in order to prove that a statement is not the fruit of an illegal search or arrest, it does not suffice to show that evidence complies the Fifth Amendment. The government must also establish that admitting the statement complies with the Fourth Amendment.

■ In the present case, the defendant contends that the statements were the result of the combined force of both the illegal arrest and search. That is, that had he not been inside the police car (as a result of the illegal arrest), and had he not heard through the police car's radio that Figueroa–Gonzalez was arrested (as a result of the illegal search), he would not have uttered the incriminating statement. To this, the government simply counters that the statement is admissible because it was not the result of police interrogation. The government, however, does not make the Fourth Amendment analysis required by *Brown v. Illinois*, and does not claim any other exception to the fruit of the poisonous tree doctrine.[5]

Thus, all things considered, the Court rules that the government fails to prove that the defendant's incriminating statements came about "by means sufficiently distinguishable to be purged of the primary taint." *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). This, the Court must point out, would have been avoided if the agents had secured a search warrant to enter the defendant's home, as they surely could.

---

**3.** The defendant did not object to the Magistrate–Judge's finding that the statements were not in violation of *Miranda*.

**4.** 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

**5.** To wit, the "attenuated connection," "independent source," and "inevitable discovery" doctrines. *See* 6 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 11.4(a) (4th Edition 2004).

258

## CONCLUSION

For the reasons discussed above, the Court **ADOPTS** the R & R and, accordingly, **GRANTS** the Motion to Suppress.

IT IS SO ORDERED.