**EL DIA, INC., Plaintiff(s)**

v.

**PUERTO RICO DEPARTMENT OF CONSUMER AFFAIRS, et al., Defendant(s).**

**Civil No. 00–2631 (JAG).**

United States District Court, D. Puerto Rico.

March 31, 2004.

Etienne Totti–Del–Valle, Totti & Rodriguez Diaz, Hato Rey, PR, for Plaintiff.

Nerylu Figueroa–Estasie, Sanchez, Betances & Sifre, P.S.C., San Juan, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

On August 15, 2003, the Department of Consumer Affairs ("DACO") moved the Court for summary judgment dismissing plaintiff's claims (Docket No. 36). On the same day, El Dia, Inc. ("El Dia"), moved for summary judgment on their claims against "DACO" (Docket No. 37). At issue in both motions is the Constitutionality of Article 24 of DACO's Regulations of Deceptive Practices and Advertisements ("Art.24"). On October 3, 2003, the Court referred both motions to Magistrate–Judge Justo Arenas for a Report and Recommendation (Docket No. 46). On November 6, 2003, Magistrate–Judge Arenas recommended that the Court grant El Dia's motion for summary judgment and deny DACO's, thus declaring Article 24 unconstitutional (Docket No. 47). On November 21, 2003, DACO timely filed objections to the Magistrate–Judge Report and Recommendation. (Docket No. 48). For the reasons discussed below, the Court **ADOPTS** the Magistrate–Judge's Report and Recommendation in its entirety and, accordingly, **GRANTS** El Dia's motion for summary judgment (Docket No. 37) and **DENIES** DACO'S motion for summary judgment (Docket No. 36).

## FACTUAL BACKGROUND

El Dia is a corporation organized under the laws of the Commonwealth of Puerto Rico with its principal place of business in Guaynabo, Puerto Rico. It publishes "El Nuevo Dia," a daily newspaper of general circulation in Puerto Rico. DACO is an administrative agency of the Commonwealth of Puerto Rico. Its "primary purpose [is] to defend and implement the rights of the consumer, to restrain the inflationary trends; as well as the establishment and inspection of a price control over the goods and services for use and consumption." 3 P.R. Laws Ann. § 341b (2002).

Article 24 requires that non-residents of the Commonwealth of Puerto Rico, who wish to advertise within Puerto Rico, first post a bond in the amount of $25,000.00, to cover potential fines for breach of the provisions, orders, and resolutions of Regulation 4339, and to cover any pertinent legal remedies in favor of consumers. Article 24(A) sets forth the conditions for posting the non-resident bond, and provides that posting the bond constitutes a voluntary submission to the jurisdiction of the Courts of the Commonwealth of Puerto Rico. Furthermore, Article 24(B) imposes upon any "intermediaries" residing within Puerto Rico the obligation to verify and ensure that the non-resident advertiser has posted the required bond before publishing its advertisement. In order to comply with this requirement, the intermediary must obtain a copy of the bond certificate. Article 24(C) gives "intermediaries" the option to post the bond on behalf of the non-resident advertiser. The purpose of Article 24 is to protect consumers from advertising practices which create or tend to create a false or misleading appearance regarding goods and services offered in commerce.

On October 9, 2000, DACO served El Dia with a Notice of Infraction (Docket No. 37, Exh. 1.), alleging a violation of Article 24 and imposing a fine of $750 for allegedly publishing an advertisement by a non-resident without first verifying that the required bond had been posted.

A. *Standard for Reviewing a Magistrate–Judge's Report and Recommendation*

A District Court may, on its own motion, refer a pending motion to a U.S. Magistrate–Judge for a Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Local Rule 72(a).

Pursuant to Fed.R.Civ.P. 72(b) and Local Rule 72(d), the adversely affected party may contest the Magistrate–Judge's Report and Recommendation by filing written objections "[w]ithin ten days of being served" with a copy of the order. *See* 28 U.S.C. § 636(b)(1). Since defendants have filed timely objections to the Magistrate–Judge's Report and Recommendation, the Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which specific objection is made. *See United States v. Raddatz*, 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Lopez v. Chater*, 8 F.Supp.2d 152, 154 (D.P.R.1998).

### B. *Standard for Summary Judgement*

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *See also Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52. (1st Cir.2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented before the court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49 (1st Cir. 2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine". "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment." *Id.* at 252, 106 S.Ct. 2505. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

### C. *DACOS's Objections to the Report and Recommendation*

The Magistrate–Judge analyzed Article 24 to determine whether it constitutes an

unconstitutional restriction on commercial speech. To determine the constitutionality of government restrictions on commercial speech, the Magistrate–Judge applied the four-part analysis announced by the Supreme Court in *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).

> At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least [1] must concern lawful activity and not be misleading. Next, we ask [2] whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine [3] whether the regulation directly advances the governmental interest asserted, and [4] whether it is not more extensive than is necessary to serve that interest."

*Id.* at 566.

In his application of *Central Hudson,* the Magistrate–Judge found that Article 24 yielded positive answers to the first two inquiries of the Central Hudson test. When analyzing the third prong the Magistrate–Judge found that the bond requirement provided ineffective and remote support to the interest of protecting consumers. Therefore, the advancement of that interest is too tenuous to uphold such a restriction on speech, and DACO failed to meet the third prong of the Central Hudson's analysis. The Magistrate–Judge did not address the fourth prong because he found that Article 24 failed to directly advance the government's interest. Finally, the Magistrate–Judge concluded that the requirement that a non-resident advertiser post a $25,000.00 bond in order to advertise in Puerto Rico constitutes an impermissible restriction on commercial speech. DACO failed to meet its burden of justifying the regulation since it cannot demonstrate that the restriction directly and materially advances its interest in consumer protection. Consequently the Magistrate–Judge recommended that the Court Grant El Dia's motion for summary judgment and declare Article 24 unconstitutional.

In the objections to the Magistrate–Judge's Report and Recommendation, defendants argue that El Dia does not have standing to make a facial constitutional attack against the Regulation, since it is not a "non-resident advertiser," but rather a resident "intermediary". Moreover, defendants contend that plaintiff fails to point to any specific commercial speech sought to be disseminated by a non-resident advertiser, whose dissemination was or has been prohibited, hampered, or chilled by Article 24. Defendants argue that El Dia's allegation that Article 24 is a prior restraint on commercial speech is merely a hypothetical averment. Defendants also question the ripeness of this cause of action, alleging that plaintiff's claim against enforcement of these fines is not ripe for judicial review inasmuch as the decision to impose the fine is not yet "final".

El Dia advances several arguments to point out the constitutional infirmity of Article 24. First, it alleges that, unlike non-resident advertisers, residents of Puerto Rico have unfettered access to advertisement of commercial expression without any requirement to post a bond. This bond requirement has the effect of imposing on the non-resident a condition precedent that it have a net worth of at least $25,000.00 before being able to advertise within Puerto Rico's written media. El Dia further argues that non-residents can advertise by other means, like postal service, via satellite radio, television, internet, telephone, and fax without any obligation to post a bond. This, El Dia claims, places it in a position of competitive disad-

vantage with the other broadcasters of commercial advertisements. Additionally, El Dia alleges that non-resident advertisers wishing to contract with El Dia have been deterred from doing so because of the bond requirement. Finally, El Dia argues that the bond requirement has a chilling effect on its ability to fully exercise its First Amendment rights.

### 1. *Standing*

 Before a court may consider the merits of a case, it must first determine whether there is standing to bring the cause of action. *Berner v. Delahanty,* 129 F.3d 20, 23 (1st Cir.1997). If the plaintiff lacks standing, the court lacks jurisdiction to entertain the case. *New Hampshire Right to Life Political Action Comm. v. Gardner,* 99 F.3d 8, 12(1st Cir.1996). In order to have standing, the plaintiff must establish the following elements: (1) an "injury in fact"—that the plaintiff has suffered an actual or threatened injury which is particularized and concrete, and not merely hypothetical or conjectural; (2) causation—that the injury is fairly traceable to complained-of conduct of the defendant; and (3) redressability—that it is likely that the alleged injury will be redressed by the requested relief. *Legal Aid Soc'y of Hawaii v. Legal Services Corp.,* 145 F.3d 1017, 1030 (9th Cir.1998); *Gardner,* 99 F.3d at 13.

 The "injury in fact" element requires the plaintiff to have suffered "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations and internal quotations omitted). The concept of imminence is intended to ensure that the plaintiff's alleged injury is not overly speculative. *Sea Shore Corp. v. Sullivan,* 158 F.3d 51, 56 (1st Cir.1998). In this case, it is uncontested that (1) plaintiff is required to publish advertisements for any advertiser which contains true information; (2) that regulation 4339 provides that all means of communication, including, among others, radio stations, televisions, movies, newspapers and magazines, advertisements' agencies or other equivalent, or intermediaries that directly or indirectly may be related to the broadcasting of advertisement shall be liable to the consumer for any damages caused by misleading advertisement; (3) the non-resident bond is intended to provide DACO a mechanism to enforce the imposition of fines for violations to Regulation No. 4339 by a non-resident advertiser, who may be subject to the jurisdiction of the Puerto Rico courts; (4) that various non-resident advertisers have posted the bond in compliance with Article 24; (5) that under Article 24, El Dia, as an intermediary, is to ensure that the non-resident advertiser has posted the bond before publishing an advertisement; (6) that the Article 24(c) grants intermediaries the option to post the non-resident bond themselves and; (7) that El Dia has been fined four times for failing to verify whether non-residents advertisers had posted the bond.

The fact that El Dia has been fined four times is a concrete, non-speculative threat to its business operations. Thus, the "injury in fact" element of standing is met. The fines are a result of the challenged article, thus, the causation requirement is also met. And finally, a declaration of Article 24's unconstitutionality would prevent El Dia from being fined, thus, its injury can be redressed by the requested relief.

 One of the objections raised is whether the Defendants waived their right to raise the issue of El Dia's standing. The First Circuit has stated that objections to a party's standing in a given case

cannot be waived, and the court must consider a challenge to a party's standing whenever raised, regardless of whether the challenger failed to make an earlier challenge, or whether the court itself perceives a standing problem. *See United States v. AVX Corp.*, 962 F.2d 108, 116 n. 7 (1st Cir.1992). The Defendants therefore did not waive their challenge to El Dia's standing, because such an objection cannot be dispositively waived. *See Sentinel Trust Co. v. Newcare Health Corp. (In re Newcare Health Corp.)*, 244 B.R. 167, 170 (1st Cir.BAP 2000). Therefore, the Court finds that El Dia has standing and it has jurisdiction to decide the merits of this case.

### 2. *Ripeness of the present cause of action*

■■■ Defendant submits that the District Court lacks jurisdiction to enjoin the administrative fines imposed on El Dia because the administrative determinations imposing the fines are not yet final, and, thus, not ripe for judicial review. The issue of ripeness was raised as an objection and was not properly presented before the Magistrate–Judge. A District Court Judge, on a *de novo* review of a Magistrate–Judge's Report and Recommendation, has the option of entirely ignoring arguments not presented to the Magistrate–Judge. *See Crooker v. Van Higgins*, 682 F.Supp. 1274 (1st Cir.1988). "We hold categorically that an unsuccessful party is not entitled as of right to *de novo* review by the judge of an argument never seasonably raised before the magistrate." *Paterson–Leitch v. Massachusetts Elec.* 840 F.2d 985, 990–1 (1st Cir.1988). Therefore, this Court will not address the issue of ripeness.

### 3. *First Amendment Claim*

■■■ Defendants contend that Magistrate–Judge Arenas erred when he found that Article 24 did not satisfy the last two prongs of the *Central Hudson* test. They also contend that Magistrate–Judge Arenas failed to recognize the legitimate state interest underlying Article 24 and how it is advance by the Article 24. Defendants submit that Article 24 complies with the *Central Hudson* test and that it is valid under the First Amendment.

■■■ Commercial speech is protected by the First Amendment. It is valued because it aids the speaker in his economic endeavors and also assists consumers in making an informed choice. *Central Hudson*, 447 U.S. at 563, 100 S.Ct. 2343. The protection afforded to speech that merely proposes a commercial transaction is a limited one in application. *Posadas de Puerto Rico Assoc. v. Tourism Co. of Puerto Rico*, 478 U.S. 328, 340, 106 S.Ct. 2968, 92 L.Ed.2d 266 (1986). In *Central Hudson*, the Supreme Court set forth a test to determine if a governmental restriction on particular commercial speech is permissible. First, the commercial speech must concern lawful activity and not be misleading or fraudulent. Second, the government's interest in restricting the speech must be substantial. Third, the regulation must "directly advance that government interest." Fourth, the restriction must not be more extensive than necessary to serve that interest. 447 U.S. at 570, 100 S.Ct. 2343. Only the last two prongs are at issue here.

The third prong of *Central Hudson* requires that the government demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree. *Edenfield v. Fane*, 507 U.S. 761, 770–1, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993). The speech restriction must directly and materially advance the asserted interest. *Greater New Orleans Broadcasting Ass'n v. Unites States*, 527 U.S. 173, 188, 119 S.Ct. 1923, 144 L.Ed.2d 161 (1999).

In this case DACO contends that Article 24's bond requirement is intended to provide the agency with a mechanism with which to enforce the imposition of fines against non-residents for violations of Regulation 4339. Moreover, that it "provides local consumers with a mechanism to be able to recover fines and penalties from non-resident advertisers in the event that they engage in deceptive practices and advertisements." (DACO's Memorandum of Law in Support of its Motion for Summary Judgment, Docket No. 36 at 23.)

The Court's detailed review of the record reveals that DACO attempts to justify the restriction by relying on mere speculation and conjecture. The record lacks evidence that support the allegations that the harms Article 24 is intended to remedy are real. In addition, the Court agrees with the Magistrate–Judge's finding that the bond requirement provides only ineffective and remote support for the purpose asserted by DACO. Consequently, the bond fails to directly advance the government's interest in consumer protection and DACO has failed to meet its burden under the third prong of the *Central Hudson* test.

Having found that Article 24 fails to directly advance the government's interest, the Court need not enter into *Central Hudson's* fourth prong.

### CONCLUSION

For the foregoing reasons, the Court **ADOPTS** the Magistrate–Judge's Report and Recommendation in its entirety, and, accordingly, **GRANTS** El Dia's motion for summary judgement and **DENIES** DACO's motion for summary judgement. Judgment shall enter accordingly.

IT IS SO ORDERED.